UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROSIE PASSMORE, Individually and as Special Administrator of the Estate of WILLIE PASSMORE, Deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Cause No. 2:13-cv-290<br>) |
| JAMES R. BARRETT, JR., Individually and d/b/a LOS SUENOS, LANDSTAR CANADA, INC., and LANDSTAR RANGER, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

*Background*

This matter is before the court on the Motion for Adverse Inference Based upon Spoliation of Evidence [DE 56], Motion to Bar Opinion Testimony from Donald Hess [DE 58], and the Motion to Bar Opinion Testimony from Stan Smith [DE 60] filed by the defendant, James R. Barrett Jr., on February 27, 2015. For the following reasons, the Motion for Adverse Inference Based upon Spoliation of Evidence [DE 56] is **DENIED**, the Motion to Bar Opinion Testimony from Donald Hess [DE 58] is **DENIED**, and the Motion to Bar Opinion Testimony from Stan Smith [DE 60] is **DENIED**.

*Background*

On July 29, 2013, the plaintiff, Rosie Passmore, filed a state court complaint against the defendants for the wrongful death of her husband, Willie Passmore. On August 23, 2013, the defendant, James R. Barrett Jr., removed this case to federal court. Passmore has alleged that Barrett negligently ran over and killed Willie Passmore while Willie Passmore was working at

Boss Truck Shop in Gary, Indiana. On June 23, 2014, this court granted a motion to intervene filed by Creative Risk Solutions, as subrogee of Bosselman, Inc.

Bosselman was doing business as Boss Truck Shop and employed Willie Passmore. Bosselman retained surveillance video of Boss Truck Shop, which it kept on a thirty day loop. Therefore, it retained the video for thirty days before discarding the video. After Willie Passmore's death, Bosselman's representatives met with an OSHA investigator. The investigator indicated what portions of the video he needed Bosselman to preserve for his investigation. Bosselman preserved a portion of the surveillance video that showed Barrett walking to his truck from the shop lobby, Barrett pulling the truck out of the bay, and the truck running over Willie Passmore. However, Bosselman did not preserve video from the time Barrett arrived at the truck shop to the time he walked out of the lobby. Barrett has claimed that the missing video would have shown Willie Passmore telling Barrett to pull his truck out of the bay shortly before Barrett went into the shop lobby.

On January 26, 2015, Passmore disclosed an unsigned expert report of Donald Hess. On March 2, 2015, Passmore supplied Barrett with a signed copy of Hess' report. Hess' report offered the following opinions:

> James Barrett, as a licensed commercial driver, failed to exercise ordinary care in the following ways:
> 1) Not doing a walk around his vehicle before pulling out of the bay;
> 2) Not closing his driver door to look through his mirror before pulling out of the bay;
> 3) Not honking his horn before pulling out of the bay;
> 4) Not monitoring his mirrors while pulling out of the bay.

Hess has held a commercial driver's license since 1971 that allowed him to drive single, double, and triple tractor trailers and hazardous materials. From 1994 to 2013, he was the Director of Transportation and Public Safety Programs for John Wood Community College in Quincy,

Illinois. As the program's director, Hess designed, organized, and implemented the Truck Driver Training Program. Additionally, he taught students the driving skills necessary to obtain a commercial driver's license. Furthermore, Hess has consulted on over 100 cases as an expert witness in truck litigation since 1997.

Hess admitted that he did not use science, physics, or calculations to form his opinions in this case. Additionally, he stated that he did not take any photographs or measurements of the scene and was not certified in and had not performed an accident reconstruction. Furthermore, Hess could not conclude that the outcome would have been different had Barrett followed the procedures outlined in Hess' report.

On November 27, 2013, Passmore disclosed Stanley Smith, PhD. as an expert witness in response to Barrett's interrogatory number 25. Additionally, she disclosed a forty-four page report signed by Smith that calculated her financial loss of support from Willie Passmore's death. Smith's report calculated four categories of losses:

> (1) the loss of wages and employee benefits;
> (2) the loss of household/family services, including
>    a) the loss of housekeeping and household management services;
>    b) the loss of the advice, counsel, guidance, instruction and training services sustained by Mr. Passmore's surviving wife;
>    c) the loss of accompaniment services sustained by Mr. Passmore's surviving wife;
> (3) the loss of the value of life ("LVL"), also known as loss of enjoyment of life; and
> (4) the loss of the society or relationship sustained by Mr. Passmore's surviving wife.

On January 26, 2015, Passmore provided Barrett with an amended expert witness disclosure that did not include Smith. On February 13, 2015, Passmore emailed Barrett another copy of Smith's report that she disclosed previously and asked whether Barrett intended to depose Smith. On

3

March 2, 2015, Passmore emailed Barrett a letter enclosing Smith's curriculum vitae and his Rule 26 litigation history.

*Discussion*

Barrett has requested the court to allow an adverse inference based upon the spoliation of surveillance video from the date of the accident. Neither party has challenged that state law governs spoliation in a diversity action. *See* **J.S. Sweet Co., Inc. v. Sika Chemical Corp.**, 400 F.3d 1028, 1032 (7th Cir. 2005) (indicating that the parties agreed that Indiana law governed the diversity action's spoliation issue); **State Farm Fire & Cas. Co. v. Frigidaire, a Div. of Gen. Motors Corp.**, 146 F.R.D. 160, 162 (N.D. Ill. 1992) (finding that the pre-suit duty to preserve material evidence was substantive under the **Erie** Doctrine and therefore, required the court to apply state law). Because the acts giving rise to this suit occurred in Indiana, this court will apply Indiana spoliation law.

Spoliation of evidence occurs when there is an "'intentional destruction, mutilation, alteration, or concealment of evidence.'" **Cahoon v. Cummings**, 734 N.E.2d 535, 545 (Ind. 2000) (quoting BLACK'S LAW DICTIONARY 1409 (7th ed. 1999)). While evidence of spoliation does not relieve a party of the burden of proving her case, it "may result in an inference that the production of the evidence would be against the interest of the party which suppresses it" where the party has exclusive possession of the evidence. **Cahoon**, 734 N.E.2d at 545 (quotation marks and citations omitted); **Great Am. Tea Co. v. Van Buren**, 33 N.E.2d 580, 581 (Ind. 1941). *But see* **Boneck v. City of New Berlin**, 22 Fed. App'x 629, 630 (7th Cir. 2001) ("[P]enalties in litigation should be proportionate to wrongs. Spoliation that sabotages a strong case supports default judgment; spoliation that destroys collateral evidence in a weak case does not require the same penalty.") (citation omitted).

4

Bosselman, Inc. d/b/a Boss Truck Shop, Willie Passmore's employer, maintained video surveillance of the truck shop. Bosselman maintained surveillance tapes on a thirty day loop. Therefore, after thirty days, it discarded the surveillance tapes. Bosselman preserved video of the accident, but did not preserve video before Barrett walked from the shop's lobby to his tractor. Barrett has claimed that Willie Passmore told him to get his mileage and to pull the truck forward before Barrett entered the lobby. Barrett has relied on that conversation to argue that he did not breach a duty to Willie Passmore and that he was not the proximate cause of Willie Passmore's death.

On May 9, 2014, Creative Risk Solutions, as subrogee of Bosselman, requested leave to intervene in this action, which this court granted. Creative Risk Solutions indicated that it paid two-thirds of Willie Passmore's average weekly wage to his dependents pursuant to Bosselman's workers' compensation insurance policy. Furthermore, it noted that it was entitled to reimbursement of sums paid to Willie Passmore's dependents following a satisfaction of judgment or settlement resolving this matter. Therefore, Creative Risk Solutions' interests align with Passmore's. Because Creative Risk Solutions, as subrogee of Bosselman, became a party to this action and Bosselman had exclusive possession of the surveillance video, Barrett has requested the court to allow an adverse inference against Passmore and Creative Risk Solutions for the missing surveillance video before Barrett entered the lobby.

Passmore has argued that the court should not draw an adverse inference against her, but against Barrett, because the missing video would show that Willie Passmore and Barrett did not speak. However, Barrett correctly noted that the court may draw an adverse inference only against the party with possession of the missing evidence. Therefore, because Barrett did not have possession of the evidence, the court cannot allow an adverse inference against him.

Passmore also has argued that there was no evidence that Bosselman intentionally destroyed the video to defeat Barrett's claims. However, Indiana law does not require the destruction in an attempt to defeat a party's claims, only that the destroying party intentionally destroyed the evidence.

The court finds that Bosselman intentionally destroyed the surveillance video by failing to preserve the video before Barrett entered the lobby. Therefore, the court could allow an adverse inference against Passmore and Creative Risk Solutions. However, the court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. **Federal Rule of Evidence 403**. The court finds that allowing an adverse inference based on Bosselman's destruction of evidence would be unduly prejudicial to Passmore. Passmore never had possession or control of the surveillance video. Additionally, the only reason an adverse inference could be drawn in this case was because Creative Risk Solutions intervened as subrogee of Bosselman. Furthermore, Creative Risk Solutions' interests are minor compared to Passmore's. It also would be difficult for the jury to draw an adverse inference against Creative Risk Solutions solely and not against Passmore. Therefore, the Motion for Adverse Inference Based upon Spoliation of Evidence [DE 56] is **DENIED**.

Barrett also has requested the court to bar opinion testimony from two of Passmore's expert witnesses, Donald Hess and Stan Smith. The admissibility of expert evidence is governed by Federal Rule of Evidence 702, ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny. ***Winters v. FruCon Inc.***, 498 F.3d 734, 741 (7th Cir. 2007). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

> understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert*, the court exercises a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. *Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013); *Winters*, 498 F.3d at 741; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The examination applies "to all kinds of expert testimony." *U.S. v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002) (noting that Rule 702 makes no distinction between "scientific" knowledge and other forms of specialized knowledge) (citing *Kumho Tire*, 526 U.S. at 149). The main purpose of the court's gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

In light of *Daubert* and *Kumho Tire*, the Seventh Circuit has endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable;" and second, the court must determine whether the expert's testimony is "relevant." *Lees*, 714 F.3d at 521; *Hardiman v. Davita Inc.*, 2007 WL 1395568 (N.D. Ind. May 10, 2007). Like all questions of admissibility, those regarding a witness's testimony are matters of law to be determined by the judge. *Hardiman*, 2007 WL 1395568 at *2 (quoting and citing *Porter v. Whitehall Labs., Inc.*, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993). "The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence." *Bickel v. Pfizer, Inc.*, 431 F. Supp. 2d 918, 921 (N.D. Ind. 2006).

7

To satisfy the reliability requirement, the expert must be qualified in the relevant field, and his opinion must be based on sound methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); *see Hardiman*, 2007 WL 1395568 at n.1 (discussing courts' ability to combine the qualifications inquiry into the reliability prong). In determining whether an expert is qualified to render an opinion, the court should consider his "full range of practical experience as well as academic or technical training . . . ." *U.S. v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) (quoting *Smith*, 215 F.3d at 718). Still, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter . . . . [T]he court's gatekeeping function [also] focuses on an examination of the expert's methodology." *Smith*, 215 F.3d at 718. Hence, an expert's work is admissible "only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

*Daubert* outlined the following factors in assessing an expert's methodology:

> (1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance.

*Conn*, 297 F.3d at 555 (quoting *Daubert*, 509 U.S. at 593–94). No matter what type of specialized information is proffered, "the *Daubert* factors set forth above ought not be considered a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge." *Conn*, 297 F.3d at 555–56. The list should be flexible "to account for the various types of potentially appropriate expert testimony" rather than definitive or exhaustive. *Depulty v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003); *see*

*Lees*, 714 F.3d at 521 ("[B]ecause there are 'many different kinds of experts, and many different kinds of expertise,' the reliability analysis should be geared toward the precise sort of testimony at issue and not any fixed evaluative factors.") (citing ***Kumho Tire***, 526 U.S. at 150). The court may tailor its approach using the ***Daubert*** factors as a starting point in an effort to evaluate the particular evidence before it. ***Conn***, 297 F.3d at 556.

The expert testimony must "fit the issue to which the expert is testifying." ***Chapman v. Maytag Corp.***, 297 F.3d 682, 687 (7th Cir. 2002) (internal citations and quotations omitted). Further, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." ***U.S. v. Mamah***, 332 F.3d 475, 478 (7th Cir. 2003) (citing ***Gen. Elec. v. Joiner***, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). As the Supreme Court noted: "nothing in either ***Daubert*** or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." ***Gen. Elec.***, 522 U.S. at 146. Therefore, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." ***Zenith Elec. Corp. v. WH-T Broad. Corp.***, 395 F.3d 416, 419 (7th Cir. 2005); *see* ***Mamah***, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert."). Rather, the Seventh Circuit has reiterated: "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." ***Zenith Elec. Corp.***, 395 F.3d at 419 (collecting cases of reiteration).

Once evidence is deemed reliable, it still must be excluded if it is not relevant, which under Rule 702 means that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." ***U.S. v. Hall***, 93 F.3d 1337, 1342 (7th Cir. 1996). The expert testimony must relate to an issue in the case, or it is not relevant. ***Daubert***, 509 U.S. at 591. To

9

"assist" a jury, the Seventh Circuit has explained that the expert testimony will not aid a jury if it "addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." *Hall*, 93 F.3d at 1104. Alternatively, if, because of the expert's knowledge of relevant facts, the expert's particular use of those facts "will help the trier determine a fact, then the opinion is admissible under Rule 702." *Porter*, 791 F. Supp. at 1343.

First, Barrett has argued that the court should bar Donald Hess' testimony because it was not disclosed properly and timely pursuant to Rule 26(a)(2). On January 27, 2015, Barrett filed a motion to strike Passmore's expert disclosure of Donald Hess because it was not filed timely. When Barrett filed the pending motion to bar Donald Hess' testimony, the motion to strike remained pending. Therefore, Barrett has reiterated his argument that Hess' opinion was not disclosed timely. However, on March 10, 2015, this court found that Passmore disclosed Hess' opinion timely and denied the motion to strike the expert disclosure. Therefore, the court will not address the argument that Hess' opinion was not disclosed timely.

Barrett also has argued that Passmore did not disclose Hess' opinion properly because Hess did not prepare and sign the written report. Passmore has indicated that Barrett did not allege any prejudice from the report lacking a signature. Furthermore, Passmore provided Barrett a signed copy of Hess' report on March 2, 2015, thirty-five days after the initial disclosure. The court finds that Passmore's initial unsigned disclosure of Hess' report was harmless because Barrett has not identified any prejudice as a result of any Rule 26(a)(2) violation. *See Segle v. Stegmiller*, 2012 WL 1570129, at *1 (N.D. Ill. May 3, 2012) (finding an expert's unsigned report harmless because the plaintiff did not identify any prejudice).

10

Next, Barrett also has argued that the court should bar Hess' opinions because they do not meet the requirements of Rule 702. Passmore has indicated that Hess would testify to the following opinions:

> James Barrett, as a licensed commercial driver, failed to exercise ordinary care in the following ways:
> 1) Not doing a walk around his vehicle before pulling out of the bay;
> 2) Not closing his driver door to look through his mirror before pulling out of the bay;
> 3) Not honking his horn before pulling out of the bay;
> 4) Not monitoring his mirrors while pulling out of the bay.

Barrett has argued that Hess' opinions improperly instruct the jury on legal conclusions because they conclude that he failed to exercise ordinary care. He has correctly claimed that the judge should instruct the jury on the applicable principles of law, not an expert witness. However, Passmore has stated that Hess' opinions were offered to show the standard of care for a commercial truck driver. Although Hess' written report concluded that Barrett failed to exercise ordinary care, Hess can testify regarding the standard of care for a commercial truck driver. The court does not find that Hess' opinions improperly instruct the jury on legal conclusions because he may testify to the standard of care for a commercial truck driver without discussing legal terms such as ordinary care. Therefore, Hess cannot testify that Barrett failed to exercise ordinary care, but he can explain the procedures a commercial truck driver should follow.

Barrett also has claimed that Hess was not qualified to offer expert testimony regarding ordinary care because Hess was not a lawyer, did not attend law school, and has never practiced law. As discussed above, Hess cannot testify that Barrett failed to exercise ordinary care, but he can testify regarding the standard of care for a commercial truck driver. Additionally, Hess is qualified to testify to the standard of care for a commercial truck driver. He has held a

11

commercial driver's license since 1971 that allowed him to drive single, double, and triple tractor trailers and to pull hazardous materials. Moreover, Hess was the Director of Transportation and Public Safety Programs for John Wood Community College in Quincy, Illinois where he designed, organized, and implemented the Truck Driver Training Program. As the program's director, Hess taught students the driving skills necessary to obtain a commercial driver's license. Furthermore, he has consulted in over 100 cases as an expert witness in the field of truck litigation since 1997.

Additionally, Barrett has argued that Hess' opinions were not reliable because he did not use science, physics, or calculations to form his opinions and because Hess could not say whether the outcome would have been different if Barrett had followed his opinions. Hess' opinions regarding the standard of care for a commercial truck driver do not require science, physics, or calculations. Rather, he can base his opinions on his knowledge and experience as a commercial truck driver and truck driving instructor. Although Hess cannot conclude that the outcome would have been different had Barret followed his opinions, that does not indicate that Hess' opinions are unreliable. Rather, that goes to the weight of Hess' testimony, which the jury will determine.

Last, Barrett has argued that Hess' opinions were not relevant because they do not make a fact more or less probable. Barrett has claimed that Hess' opinions were not relevant because Hess could not conclude that the outcome would have been different if Barrett had followed his opinions. However, evidence is relevant if it will help the jury to understand the evidence or to determine a fact in issue. Hess' testimony is relevant because it will assist the jury in deciding the proper conduct for a commercial truck driver. Therefore, the Motion to Bar Opinion Testimony from Donald Hess [DE 58] is **DENIED**.

Barrett also has requested the court to bar opinion testimony from Passmore's expert Stan Smith. First, Barrett has argued that Passmore did not disclose Smith's opinions properly or timely. On November 27, 2013, Passmore disclosed Smith as an expert and provided Barrett with Smith's signed report. However, Barrett has argued that Passmore's January 26, 2015 expert disclosure, which this court has ruled was timely, did not list Smith and therefore, he believed that Passmore had abandoned Smith as an expert. Furthermore, Barrett noted that Passmore did not disclose Smith's curriculum vitae or Rule 26 litigation history by the discovery deadline. Passmore provided Smith's curriculum vitae and litigation history on March 2, 2015, thirty-five days after the deadline. Additionally, she indicated that she emailed Barrett's counsel on February 13, 2015, eighteen days after the deadline, to enclose an additional copy of Smith's report.

The court finds that Passmore disclosed Smith timely. Although her January 26, 2015 disclosure did not list Smith, Passmore had disclosed Smith and provided his signed report on November 27, 2013. Additionally, Barrett has not demonstrated any prejudice from the fact that Passmore provided Smith's curriculum vitae and litigation history thirty-five days after the deadline.

Barrett also has argued that the court should bar Smith's opinions because the listed categories of damages are not permitted under Indiana's Wrongful Death Statute, IND. CODE § 34-23-1-1. Specifically, he has claimed that the categories listed as: loss of household/family services; loss of value of life; and loss of society or relationship were not permitted under IND. CODE § 34-23-1-1. Passmore has agreed to limit Smith's testimony to: loss of wages and employee benefits and loss of household/family housekeeping and house management services. Passmore has argued that both of those categories are recoverable under Indiana's Wrongful

13

Death Statute. The court agrees that Indiana's Wrongful Death Statute does not bar those types of damages. *See* **IND. CODE § 34-23-1-1** (stating that damages for a wrongful death may include lost earnings); ***Durham v. U-Haul Int'l***, 745 N.E.2d 755, 765–66 (Ind. 2001) (agreeing that a spouse may recover for loss of consortium in a wrongful death action).

In his motion to bar Smith's opinions, Barrett also has argued that Smith's testimony on hedonic damages and damages beyond those permitted by Indiana law did not meet the requirements of Rule 702. Therefore, in response, Passmore agreed to limit Smith's testimony to the loss of wages and benefits and the loss of household/family housekeeping and house management services, damages that this court has found are recoverable under Indiana's Wrongful Death Statute. In reply, Barrett argued, for the first time, that those categories also failed to meet the requirements of Rule 702. Specifically, Barrett has argued that Smith's testimony was unreliable because he did not cite peer-reviewed publications indicating that his methods had gained general acceptance within the field of economics.

It is well established that an argument first raised in a reply brief is waived. ***Bracey v. Grondin***, 712 F.3d 1012, 1020 (7th Cir. 2013) (citing ***Dye v. United States***, 360 F.3d 744, 751 n.7 (7th Cir. 2004)). Therefore, Barrett's argument that Smith's testimony on recoverable damages under Indiana's Wrongful Death Statute did not meet Rule 702 is waived. Even if Barrett's argument was not waived, he incorrectly asserted that Smith's report failed to cite peer-reviewed publications. Smith cited peer-reviewed publications regarding the above damages on pages four, eleven, and twelve of his report.

Furthermore, Smith relied on Willie Passmore's tax returns, Passmore's Amended Complaint, an interview with Passmore, and information from the case. Additionally, Smith cited sources for the values and rates he used in his formulas and calculations. Moreover, he

14

cited peer-reviewed publications for the methodologies he used. Therefore, the court finds Smith's testimony reliable under Rule 702.

Although not challenged by Barrett, the court also finds Smith qualified to provide expert testimony on Passmore's damages and that Smith's testimony is relevant. Smith has a Ph.D. in economics from the University of Chicago, taught a class on economic damages in litigation at DePaul University from 1990 to 1994, and has worked as a consultant and expert on economics and finance since 1985. Additionally, he has published many articles on economics and testified as an expert witness on damages in many cases. Furthermore, his testimony will assist the jury in determining any damages for Passmore. Therefore, the Motion to Bar Opinion Testimony from Stan Smith [DE 60] is **DENIED**.

Barrett has indicated that he did not retain a damages expert because he believed that Passmore's failure to include Smith on her January 26, 2015 disclosure meant she had abandoned Smith's testimony. However, Barrett has not requested an extension to retain a damages expert based on that argument. Because the court has not barred Smith's testimony, Barrett may file a motion requesting an extension to retain a damages expert.

For the foregoing reasons, the Motion for Adverse Inference Based upon Spoliation of Evidence [DE 56] is **DENIED**, the Motion to Bar Opinion Testimony from Donald Hess [DE 58] is **DENIED**, and the Motion to Bar Opinion Testimony from Stan Smith [DE 60] is **DENIED**.

ENTERED this 21st day of May, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge