UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROSIE PASSMORE, Individually and Special Administrator of the Estate of WILLIE PASSMORE, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 2:13-cv-290 ) |
| JAMES R. BARRETT, JR., Individually and d/b/a LOS SUENOS, LANDSTAR CANADA, INC., and LANDSTAR RANGER, INC., | ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 54] filed by the defendant, James R. Barrett Jr., on February 27, 2015, the Motion Requesting Oral Argument on Defendant's Motion for Summary Judgment [DE 77] filed by the plaintiff, Rosie Passmore, on April 22, 2015, and the Motion to Strike Certain Evidence Submitted in Plaintiff's Response to Summary Judgment [DE 79] filed by Barrett on May 5, 2015. For the following reasons, the Motion for Summary Judgment [DE 54] is **DENIED**, the Motion Requesting Oral Argument on Defendant's Motion for Summary Judgment [DE 77] is **DENIED AS MOOT**, and the Motion to Strike Certain Evidence Submitted in Plaintiff's Response to Summary Judgment [DE 79] is **DENIED AS MOOT**.

*Background*

On July 29, 2013, the plaintiff, Rosie Passmore, filed a state court complaint against the defendants for the wrongful death of her husband, Willie Passmore (Willie). On August 23, 2013, the defendant, James R. Barrett Jr., removed this case to federal court. Passmore has

alleged that Barrett negligently ran over and killed Willie while Willie was working at Boss Truck Shop in Gary, Indiana. The parties have submitted a surveillance video that shows the accident.

The video shows the back-end of Barrett's trailer inside the service bay with the trailer extending outside the service bay where it was connected to the truck cab. The tractor was turned to the right slightly and was pulling an extra-long trailer. At the beginning of the video, Barrett walked from the Boss Truck Shop lobby along the driver's side of his tractor-trailer to the cab. At the same time, Willie was walking around the back-end of the trailer, and he picked up what appeared to be a long tire iron. As Barrett entered the cab, Willie walked to the driver's side rear tires and began using the tire iron on the rear driver's side tires. As Willie was working on the rear driver's side tires, Barrett began moving the truck forward. As the truck began to move, Willie turned around, took a couple steps along the trailer, and appeared to insert the tire iron in front of the rear tire. Shortly thereafter, the truck ran over Willie and killed him. After running over Willie, Barrett continued driving a short distance before stopping outside the service bay.

Barrett testified that he went to Boss Truck Shop to have a tire replaced on his trailer and that this was his first trip to Boss Truck Shop. He indicated that Willie informed him that the work was completed and instructed Barrett to obtain his mileage and to pull his truck forward out of the service bay. After Willie instructed him to pull forward, Barrett has claimed that he walked from the service bay into the lobby and out the front door towards his truck. Barrett has alleged that he could see around the back end of his trailer as he walked to the cab and that he did not see anyone, including Willie. After Barrett entered the cab, he pulled forward with the driver's door open because he intended to follow Willie's instructions to pull forward just out of

2

the bay. Additionally, Barrett has claimed that he would not have been able to see inside the bay from the truck because the truck was angled to the right and the bay was dark.

Passmore has disputed whether Willie told Barrett to pull his trailer out of the bay, whether Willie knew that Barrett was going to pull out of the bay, and whether Barrett alerted Willie that he was going to pull out of the bay. Passmore has argued that Barrett should have ascertained Willie's location before he pulled forward and that he should have attempted to warn Willie before he began pulling forward. Additionally, she has argued that Willie was confronted with a sudden emergency and that he exercised the proper standard of care for that situation.

*Discussion*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); **Garofalo v. Vill. of Hazel Crest**, 754 F.3d 428, 430 (7th Cir. 2014); **Kidwell v. Eisenhauer**, 679 F.3d 957, 964 (7th Cir. 2012); **Stephens v. Erickson**, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); **Stephens**, 569 F.3d at 786. If the non-movant bears the ultimate burden of persuasion on an issue at trial, the requirements are not as onerous for the moving party. **Modrowski v. Pigatto**, 712 F.3d 1166, 1168 (7th Cir. 2013). Under this circumstance, the moving party can either come forward with affirmative evidence negating an element of the

3

opponent's claim or by asserting that the nonmoving party has insufficient evidence to succeed on its claim.  ***Modrowski***, 712 F.3d at 1169.

Summary judgment may be entered against the non-moving party if it "is unable to 'establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . . .'"  ***Kidwell***, 679 F.3d at 964 (quoting ***Benuzzi v. Bd. of Educ.***, 647 F.3d 652, 662 (7th Cir. 2011) (quoting ***Celotex***, 477 U.S. at 322)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  ***Blythe Holdings, Inc. v. DeAgnelis***, 750 F.3d 653, 656 (7th Cir. 2014) (quoting ***Anderson v. Liberty Lobby***, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The non-moving party must show specific facts that create a genuine issue for trial.  ***Blythe***, 750 F.3d at 656.

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.  ***Anderson***, 477 U.S. at 248; ***Cung Hnin v. Toa, LLC***, 751 F.3d 499, 504 (7th Cir. 2014); ***Stephens***, 569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008).

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. . . . [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

***Anderson***, 477 U.S. at 250; *see* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149–51, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105, 120–22 (2000) (setting out the standard for a

directed verdict); *Celotex*, 477 U.S. at 322–23; *Stephens*, 569 F.3d at 786; *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the non-moving party); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the non-moving party). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Blythe*, 750 F.3d at 656 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits." *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). The elements that a plaintiff must prove to succeed on a negligence claim in Indiana are (1) a duty owed to the plaintiff, (2) a breach of that duty by the defendant, and (3) the breach proximately caused the plaintiff's damages. *Bond v. Walsh & Kelly, Inc.*, 869 N.E.2d 1264, 1266 (Ind. Ct. App. 2007) (citing *Peters v. Foster*, 804 N.E.2d 736, 742 (Ind. 2004)). Similarly, the elements for a wrongful death claim under Indiana law are "a duty owed by the defendant to the decedent, breach of that duty, and an injury proximately caused by the breach." *Tom v. Voida*, 654 N.E.2d 776, 787 (Ind. Ct. App. 1995); *see Karpov v. Net Trucking, Inc.*, 2011 WL 6056618, at *4 (N.D. Ind. Dec. 5, 2011) (quoting *Tom*). Breach of a duty and proximate cause issues generally are questions of fact. *See Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004); *King v. Northeast Security, Inc.*, 790 N.E.2d 474, 484 (Ind. 2003). Only where the facts are undisputed, and lead to but a single inference or conclusion, may a court as a matter of law determine whether a

5

breach of duty has occurred. *King*, 790 N.E.2d at 484; *Cullop v. State*, 821 N.E.2d 403, 407 (Ind. Ct. App. 2005); *Oxley v. Lenn*, 819 N.E.2d 851, 856 (Ind. Ct. App. 2004).

"Generally, whether a duty exists is a question of law for the court to decide." *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind. 2004) (citing *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994)). However, for purposes of this motion only, Barrett has admitted that he owed Willie a duty of ordinary care under Indiana law. Therefore, the court will not address whether a duty existed.

Barrett has argued that he did not breach a duty of ordinary care to Willie. He has claimed that Willie instructed him to pull his trailer out of the bay before he walked into the lobby. Additionally, Barrett has stated that he did not see anyone in the path of his trailer as he walked from the lobby to the cab. Furthermore, he has argued that there is no evidence that the accident could have been avoided had he pulled forward with his cab door closed, had he been able to use his side mirrors as he pulled forward, had he conducted a walk-around inspection before pulling forward, or had he honked his horn before pulling forward. Therefore, Barrett has argued that Passmore has not presented any evidence that he breached a duty of ordinary care.

Passmore has disputed whether Willie instructed Barrett to pull forward. She has relied on the video evidence that Willie did not move quickly to remove the wheel chocks and that he appeared surprised when the truck began to move. However, she also has argued that, even if Willie had instructed Barrett to pull forward, Barrett was required to complete a walk around after he entered the lobby. Passmore has relied on the testimony of Donald Hess, an expert witness, to argue that Barrett did not conform to the safety procedures of a commercial truck driver. Specifically, Hess stated that a commercial truck driver should conduct a walk around before pulling forward, should close his driver door and look through his mirrors before pulling

6

forward, honk before pulling forward, and monitor his mirrors while pulling forward. Hess did not state with certainty that the accident could have been avoided had Barrett followed those procedures.

However, the summary judgment standard requires that the court determine whether a reasonable jury could find for the non-moving party. In this case, a reasonable jury could find that Barrett breached a duty of ordinary care. There is video evidence of Barrett entering his cab, pulling forward, and running over Willie. Additionally, Barrett has not disputed that he failed to perform the procedures outlined by Hess. Furthermore, Passmore has disputed whether Willie instructed Barrett to pull forward. Based on that evidence, the court cannot find that only a single inference can be drawn from those facts. Rather, the evidence creates a genuine issue of triable fact that Barrett breached a duty of ordinary care to Willie.

Barrett also has argued that his actions were not the proximate cause of the accident. Rather, he has claimed that Willie's actions were an intervening superseding cause of the accident. First, Barrett has relied on his allegation that Willie instructed him to pull forward. However, as discussed above, Passmore has disputed that fact and has relied on the video evidence to infer that Willie did not instruct Barrett to pull forward. Furthermore, Barrett has argued that Passmore did not present any expert testimony on causation because Hess did not testify that the accident would have been avoided had Barrett complied with the standards of a commercial truck driver. Therefore, he has claimed that a jury only could speculate whether any negligence on the part of Barrett was a proximate cause of the accident. However, Passmore does not need to present expert testimony on causation if she presents sufficient circumstantial evidence to constitute a legal inference as opposed to mere speculation. **Smith v. Beaty**, 639 N.E.2d 1029, 1034 (Ind. Ct. App. 1994).

7

Additionally, Barrett has argued that Willie's own negligence was an intervening superseding cause of the accident and thus, cuts off any negligence on behalf of Barrett. Barrett has argued that Willie reached a place of safety after Barrett began pulling forward and that Willie then walked alongside the trailer and inserted a tire iron in front of the rear driver's side tire. Additionally, he has claimed that the tire iron then pinned Willie down resulting in the trailer running him over. Therefore, Barrett has claimed that Willie's negligent conduct cut off any negligence by Barrett because Willie's conduct was not reasonably foreseeable.

Passmore has argued that she presented sufficient circumstantial evidence to allow a reasonable person to conclude that Barrett proximately caused Willie's death. She has indicated that the video shows Barrett's trailer running over Willie. Additionally, she has argued that it was foreseeable that a worker could be struck by an oversized ninety foot long trailer when the trailer was located in the service bay and the driver did not ascertain the location of the workers before pulling out. Moreover, she noted that Hess stated that the service bay requires extra caution because of the risk of injuring those working in the area. Passmore has presented evidence that Barrett knew Willie was in the service bay but did not ascertain his specific location before pulling out.

Passmore also has argued that the jury should assess Willie's conduct in light of the "sudden emergency" doctrine. The "sudden emergency" doctrine requires the following factors:

1. The appearance of danger or peril must be so imminent that the party had no time for deliberation.
2. The situation relied upon to excuse any failure to exercise legal care must not have been created by the party's own negligence.
3. The apprehension of an emergency must be reasonable.

*Compton v. Pletch*, 561 N.E.2d 803, 807 (Ind. Ct. App. 1990) (citations omitted). Passmore has argued that the "sudden emergency" doctrine is applicable to this case because the truck began to

move while Willie was removing the chocks and was so imminent that he did not have time to deliberate. Additionally, she has argued that the emergency was created when Barrett pulled out of the bay as opposed to when Willie inserted the tire iron in front of the moving rear tire. Moreover, she has argued that the unexpected movement of the truck caused reasonable apprehension of an emergency in Willie. However, Barrett has argued that the "sudden emergency" doctrine does not apply because Willie created the emergency. He has claimed that Willie caused the emergency by inserting a tire iron in front of the moving rear tire.

A reasonable jury could find that Barrett proximately caused Willie's death. The video evidence shows Barrett's trailer running over Willie. Additionally, it is foreseeable that a trailer pulling out of a service bay could run over a worker inside the service bay if the driver does not ascertain the location of the worker before pulling out. Although Barrett has argued that Willie's conduct was an intervening superseding cause of the accident because he had reached a place of safety and then inserted a tire iron in front of the moving rear tire, the question of whether Willie's conduct was negligent and cut off any negligence on behalf of Barrett is best left for the jury. The facts do not present a single inference that Willie's conduct cut off any negligence on behalf of Barrett. Rather, a reasonable jury could determine that Willie's conduct was foreseeable because he had not removed the chucks when the truck began to move. Furthermore, a jury could find that Willie was presented with a sudden emergency when the truck began to move and that he acted as an ordinarily prudent person would when faced with that situation. Therefore, the Motion for Summary Judgment [DE 54] is **DENIED**.

Barrett also has requested the court to strike evidence submitted in Passmore's Summary Judgment response. Barrett has argued that Passmore presented an unauthenticated police report, Exhibit G, and unauthenticated photographs, Exhibits H through M. In response, Passmore

9

presented two depositions to authenticate the police report, Exhibit G.  She presented an affidavit to authenticate Exhibits H and I.  She indicated that Exhibits J and K were screen shots from the surveillance video that Barrett submitted in his summary judgment memorandum and argued that they were admissible as duplicates.  Passmore also included an affidavit that authenticated Exhibits L and M.

However, the court did not rely on the police report or the above photographs to decide the Motion for Summary Judgment.  Therefore, the Motion to Strike Certain Evidence Submitted in Plaintiff's Response to Summary Judgment [DE 79] is **DENIED AS MOOT**.  Passmore has requested an oral argument on Barrett's Motion for Summary Judgment.  However, because the court has decided the Motion for Summary Judgment, the Motion Requesting Oral Argument on Defendant's Motion for Summary Judgment [DE 77] is **DENIED AS MOOT**.

For the foregoing reasons, the Motion for Summary Judgment [DE 54] is **DENIED**, the Motion Requesting Oral Argument on Defendant's Motion for Summary Judgment [DE 77] is **DENIED AS MOOT**, and the Motion to Strike Certain Evidence Submitted in Plaintiff's Response to Summary Judgment [DE 79] is **DENIED AS MOOT**.

ENTERED this 15th day of June, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge