UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROSIE PASSMORE, Individually and as )
Special Administrator of the Estate of )
WILLIE PASSMORE, Deceased, )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　)
　　v. ) Cause No. 2:13-cv-290
　　　　　　　　　　　　　　　　　　)
JAMES R. BARRETT, JR., Individually and )
d/b/a LOS SUENOS, LANDSTAR CANADA, )
INC., and LANDSTAR RANGER, INC., )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants. )

**OPINION AND ORDER**

This matter is before the court on the Motion to Reconsider June 15, 2015 Opinion and Order Regarding Summary Judgment [DE 85] filed by the defendant, James R. Barrett Jr., on June 25, 2015. For the following reasons, the motion is **DENIED**.

*Background*

On July 29, 2013, the plaintiff, Rosie Passmore, filed a state court complaint against the defendants for the wrongful death of her husband, Willie Passmore (Willie). On August 23, 2013, the defendant, James R. Barrett Jr., removed this case to federal court. Passmore has alleged that Barrett negligently ran over and killed Willie while Willie was working at Boss Truck Shop in Gary, Indiana. On June 15, 2015, this court denied Barrett's Motion for Summary Judgment [DE 54].

Within his Motion for Summary Judgment, Barrett admitted that he owed Willie a duty of ordinary care under Indiana law. Thus, this court did not address that issue. This court further found a genuine issue of triable fact that Barrett breached a duty of ordinary care to Willie.

Additionally, it concluded that a reasonable jury could find that Barrett proximately caused Willie's death and that Willie was presented with a sudden emergency when the truck began to move. Barrett has requested the court to reconsider its proximate cause and sudden emergency findings.

The parties submitted a surveillance video of the accident as an exhibit to their summary judgment briefs.[1] The video showed the back-end of Barrett's trailer inside the service bay with the trailer extending outside the service bay where it was connected to the truck cab. The tractor was turned to the right slightly and was pulling an extra-long trailer. At the beginning of the video, Barrett walked from the Boss Truck Shop lobby along the driver's side of his tractor-trailer to the cab. At the same time, Willie was walking around the back-end of the trailer, and he picked up what appeared to be a long tire iron. As Barrett entered the cab, Willie walked to the driver's side rear tires and began using the tire iron on the rear driver's side tires. As Willie was working on the rear driver's side tires, Barrett began moving the truck forward. As the truck began to move, Willie turned around, took a couple steps along the trailer, and appeared to insert the tire iron in front of the rear tire. Shortly thereafter, the truck ran over Willie and killed him. After running over Willie, Barrett continued driving a short distance before stopping outside the service bay.

Barrett testified that he went to Boss Truck Shop to have a tire replaced on his trailer and that this was his first trip to Boss Truck Shop. He indicated that Willie informed him that the work was completed and instructed Barrett to obtain his mileage and to pull his truck forward out of the service bay. After Willie instructed him to pull forward, Barrett has claimed that he walked from the service bay into the lobby and out the front door towards his truck. Barrett has

---

[1] The following summary of the surveillance video and the relevant facts first appeared in this court's June 15, 2015 order.

alleged that he could see around the back end of his trailer as he walked to the cab and that he did not see anyone, including Willie. After Barrett entered the cab, he pulled forward with the driver's door open because he intended to follow Willie's instructions to pull forward just out of the bay. Additionally, Barrett has claimed that he would not have been able to see inside the bay from the truck because the truck was angled to the right and the bay was dark.

*Discussion*

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." **Hope v. United States**, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994); *see* **Talano v. Northwestern Med. Faculty Found., Inc.**, 273 F.3d 757, 760 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." **Ahmed v. Ashcroft**, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted); *see* **Seng-Tiong Ho v. Taflove**, 648 F.3d 489, 505 (7th Cir. 2011) (explaining that a court can amend its judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence) (citing **Obriecht v. Raemisch**, 517 F.3d 489, 494 (7th Cir. 2008); **United States v. Ligas**, 549 F.3d 497, 501 (7th Cir. 2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.")). In **Frietsch v. Refco, Inc.**, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

3

56 F.3d at 828; *see* **Oto v. Metro. Life Ins. Co.**, 224 F.3d 601, 606 (7th Cir. 2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); **Divane v. Krull Electric Co.**, 194 F.3d 845, 850 (7th Cir. 1999); **LB Credit Corp. v. Resolution Trust Corp.**, 49 F.3d 1263, 1267 (7th Cir. 1995). Ultimately, a motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." **Global View Ltd. Venture Capital v. Great Central Basin Exploration**, 288 F. Supp. 2d 482, 483 (S.D.N.Y. 2003) (internal quotation omitted).

Barrett has claimed that this court misunderstood his proximate cause and sudden emergency arguments. Furthermore, he has argued that the court's proximate cause and sudden emergency findings were erroneous. Therefore, this court will reconsider its June 15, 2015 opinion. However, it will amend its judgment only if Barrett has demonstrated a manifest error of law. *See* **Seng-Tiong Ho**, 648 F.3d at 505.

First, Barrett has argued that this court applied Indiana's proximate cause law incorrectly. This court held that a reasonable jury could find that Barrett proximately caused Willie's death. It stated that it was foreseeable that a trailer pulling out of a service bay could run over a worker inside the service bay when the driver failed to ascertain the worker's location before pulling out. Additionally, it found that the facts did not present a single inference that Willie's conduct cut off any negligence on Barrett's behalf. "Rather, a reasonable jury could determine that Willie's conduct was foreseeable because he had not removed the ch[o]cks when the truck began to move."

The element of proximate cause requires the court to evaluate the foreseeability of an act. *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 515–20 (Ind. Ct. App. 2005), *trans. denied*.

> Whether an act is the proximate cause of an injury, depends upon whether the injury was a natural and probable consequence of the negligent act which, in light of the attending circumstances, could have been reasonably foreseen or anticipated. The negligent act must set in motion the chain of circumstances which contribute to or cause the resulting injury.

*Key v. Hamilton*, 963 N.E.2d 573, 584 (Ind. Ct. App. 2012) (citation omitted). "[W]hen determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred." *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), *trans. denied*. Additionally, an intervening act between the negligent act and the resulting injury may break the chain of causation. *Carter*, 837 N.E.2d at 520. If the intervening act was not reasonably foreseeable then the original negligent actor is not liable. *Carter*, 837 N.E.2d at 521. Generally, the trier of fact determines the issue of proximate cause. *Carter*, 837 N.E.2d at 521. However, the court may determine proximate cause as a matter of law when it is clear that the injury was not foreseeable. *Carter*, 837 N.E.2d at 521.

Although this court held that "Willie's conduct was foreseeable," it will further examine the specific circumstances that occurred. Barrett has indicated that Willie told him to get his mileage and pull forward. However, as discussed in the June 15, 2015 order, Passmore disputed that fact and relied on the surveillance video to argue that Willie did not instruct Barrett to pull forward. She noted that Willie appeared surprised when the truck began to move and that he did not move quickly to remove the wheel chocks. Additionally, she stated that drivers could not pull out until the job was complete and the customer paid the bill. To pay the bill, the service writer needed the work order to complete the sale. However, Willie had the incomplete work

5

order at the time of the accident. Therefore, Passmore argued that a fact finder could infer that Willie did not instruct Barret to pull forward and that he was unaware that Barrett would move the truck.

This court must view the record in the light most favorable to Passmore and draw all reasonable inferences from the evidence in her favor. ***Mintz v. Caterpillar Inc.***, 768 F.3d 673, 679 (7th Cir. 2015). Additionally, it finds the above inference reasonable and must draw the inference in her favor. Therefore, this court will infer that Willie did not instruct Barrett to pull forward and that Willie was unaware that Barrett would move the truck. Furthermore, Barrett admitted that he did not ascertain Willie's location within the bay before he pulled out.

Barrett has argued that there was no evidence that Willie's conduct, attempting to stop the truck with a tire bar, was foreseeable. In support, he argued that Donald Hess, Passmore's expert, concluded that Willie's conduct was unforeseeable. However, that mischaracterizes Hess' testimony. Hess did not state that Willie's conduct was unforeseeable. Rather, he stated that he "couldn't say with certainty that sounding the horn would have prevented Mr. Passmore's actions." Deposition of Donald L. Hess at 42. Hess did not address whether Willie's particular conduct was foreseeable.

Barrett also noted that Charles Richter, Willie's supervisor, found Willie's conduct unforeseeable. Richter testified that Willie placed himself in danger by attempting to stop the truck with a tire iron. However, Richter also testified that he only could speculate whether Willie placed himself in danger because the surveillance video did not show Willie's entire body. Therefore, Richter did not state conclusively that Willie's conduct was unforeseeable. Additionally, Richter is not an expert witness, and the court will not rely on his lay opinion to interpret the surveillance video. *See **Groves v. State***, 456 N.E.2d 720, 723 (Ind. 1983) ("It

6

should be clear that if a photograph is admissible as substantive evidence because 'it speaks for itself,' a witness' opinion as to what it is saying not only does not address itself to evidentiary competence but invades the province of the jury."). Thus, Hess' and Richter's testimony does not demonstrate that Willie's conduct was unforeseeable.

Passmore did not need to present expert testimony on causation if she presented sufficient circumstantial evidence to constitute a legal inference as opposed to mere speculation. *Smith v. Beaty*, 639 N.E.2d 1029, 1034 (Ind. Ct. App. 1994). Passmore has presented sufficient circumstantial evidence to infer that Willie's particular conduct was foreseeable. This court has inferred that Willie did not instruct Barrett to pull out and that Willie was unaware that Barrett would move the truck. Passmore has demonstrated that Willie had not removed the wheel chocks, that the truck damaged the service bay by scrapping the bottom of the bay, and that the air suspension had not raised the truck to an acceptable level to pull out. She also has shown that Willie had the incomplete work order, which was required to complete the sale, and that drivers could not pull out until they completed payment.

Considering that Willie was unaware that the truck would move, that the job was incomplete, that the sale was incomplete, and the potential damage to the service bay and the truck, a reasonable jury may find it foreseeable that Willie would attempt to stop the truck with a tire iron. Based on the above circumstantial evidence, it is not clear that Willie's conduct or his injury was unforeseeable to Barrett. Therefore, the jury should decide the issue of proximate cause. Because a reasonable jury may find Willie's intervening act foreseeable, it also should determine whether his act was negligent and cut off any negligence on behalf of Barrett. Thus, this court will not reverse its proximate cause finding.

Second, Barrett has argued that this court applied the sudden emergency doctrine incorrectly because Willie's life was not in peril when he inserted the tire iron. This court held that "a jury could find that Willie was presented with a sudden emergency when the truck began to move . . . ." This court did not find that the sudden emergency arose when Willie inserted the tire iron in an attempt to stop the truck. Rather, this court found that the sudden emergency arose when the truck first began to move. The truck first began to move at 10:44:55. At that point, it is not clear from camera 11 whether Willie's left leg was aligned with the rear driver's side tire. If the truck would have hit Willie had he not moved, then a reasonable jury could find that his life was in peril and that he was presented with a sudden emergency. Therefore, this court will not reverse its sudden emergency finding.

Based on the foregoing reasons, the Motion to Reconsider June 15, 2015 Opinion and Order Regarding Summary Judgment [DE 85] is **DENIED**.

ENTERED this 14th day of September, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge